# United States Court of Appeals
## For the First Circuit

No. 04-1288

MICHAEL OLUSEAN FALAE, A/K/A VINCENT OLANREWAJU ADEYEMI,

Petitioner,

v.

ALBERTO R. GONZÁLES,* ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,

Torruella and Selya, Circuit Judges.

Ronald W. Thompson Jr. on brief for petitioner.
Peter Keisler, Assistant Attorney General, Civil Division, Anthony W. Norwood, Senior Litigation Counsel, and Jennifer Levings, Attorney, Office of Immigration Litigation, on brief for respondent.

June 9, 2005

_____
*Alberto R. Gonzáles was sworn in as United States Attorney General on February 3, 2005. We have therefore substituted Attorney General Gonzáles for his predecessor in office as respondent in this matter. See Fed. R. App. P. 43(c)(2).

**SELYA**, **Circuit Judge**.  Petitioner Michael Olusean Falae, a Nigerian national, seeks review of a final order of the Board of Immigration Appeals (BIA) denying his motion to remand proceedings to an immigration judge (IJ) in order to allow him to apply for adjustment of his immigration status.  The proposed adjustment was based on the combined force of (i) the approval of a so-called I-140 visa application sponsored by his employer, see 8 U.S.C. § 1255, and (ii) his marriage to a United States citizen, see id. § 1182(i)(1).  The petitioner argues that these two events qualify him for a waiver of inadmissability and an adjustment of status under the Immigration and Nationality Act (INA).  Discerning no abuse of discretion, we deny the petition for review.

The petitioner arrived in the United States in April of 1995 armed with a tourist visa that apparently authorized him to remain for six months.  We say "apparently" because both the visa and the petitioner's passport had been issued in the name of one Vincent Olanrewaju Adeyemi.  The petitioner initially lived with his fiancée, Stella Olujoke, a non-citizen whom he had known in Nigeria.  He did not leave after six months and, in March of 1996, he jilted Olujoke and married a United States citizen.[1]

---

[1]During the hearings before the immigration court, the petitioner testified that he could not remember the last name of his former spouse.  He referred to her throughout as "April," and we follow suit.

In July of 1997, the petitioner divorced April without ever having lived with her. Nine days later, he married his once and former fiancée, Olujoke, who then amended her pending application for asylum and related relief to include the petitioner. The petitioner and Olujoke were interviewed by an asylum officer in May of 1999. That interview resulted in an unfavorable recommendation and the institution of removal proceedings. The notice to appear was made returnable to the immigration court in Boston.

At the start, the Immigration and Naturalization Service (INS) charged the petitioner with illegal entry into the United States in violation of 8 U.S.C. § 1182(a)(6)(A)(i).[2] Subsequently, the INS lodged additional charges of inadmissability and deportability, under 8 U.S.C. § 1227(a)(1)(A), based on the use of fraudulent documents to gain entry into the United States. The same sort of charges were lodged against Olujoke. While the two cases were consolidated for some period of time, that order was rescinded after the petitioner and Olujoke divorced. Olujoke's case is pending before us (Appeal No. 04-1252) and will be addressed in a separate opinion. In this opinion, we chronicle

---

[2]The Homeland Security Act of 2002, Pub. L. 107-296, § 471, 116 Stat. 2135, 2205 (codified as amended at 6 U.S.C. § 291(a)), eliminated the INS and transferred its duties to the Department of Homeland Security. See Lattab v. Ashcroft, 384 F.3d 8, 13 n.2 (1st Cir. 2004). For simplicity's sake, we continue to refer to the INS throughout this opinion.

only those facts and proceedings that relate directly to the petitioner.

To make a tedious tale tolerably terse, the petitioner conceded removability and moved to amend his pleadings to permit an application for adjustment of status based on the approval of an I-140 visa application filed on the petitioner's behalf by his employer, the Providence School Department. The approval of that application resulted in his classification as a skilled worker and, thus, afforded a potential avenue to allow him to remain in the United States. See 8 U.S.C. § 1153(b)(3)(A) (establishing a special visa category for skilled workers who obtain labor certification).

In October of 2000, the IJ found that the petitioner's fraudulent use of documents to gain entry into the United States debarred him from an adjustment of status, notwithstanding the approved I-140 application. The IJ further found that the petitioner lacked credibility. She based this credibility determination on his demeanor, myriad inconsistencies in his trial testimony, and questionable documentation submitted on his behalf (including a bogus yearbook photograph). The IJ found "particularly troubling" the petitioner's inability to recall any details about his first marriage (including his wife's last name) and the fact that the petitioner and his first wife never lived together. Although the IJ declined to make a specific finding that

-4-

the union was entered into for the purpose of evading United States immigration laws, see 8 U.S.C. § 1154(c), she thought it probable that the marriage was a sham (she termed it a "green card" marriage). She also deemed it "curious" that the petitioner's second marriage "occurred a mere nine days after his divorce became final."

Based upon these and other findings, the IJ concluded that the petitioner had not shown past persecution in Nigeria by credible testimony. Consequently, he had not established eligibility for asylum, withholding of removal, or protection under the Convention Against Torture (CAT). Furthermore, the IJ declared the petitioner ineligible for a waiver of inadmissibility under 8 U.S.C. § 1182(i) because he could not identify any qualifying citizen relatives in the United States. Accordingly, the IJ pretermitted the application for adjustment of status, ordered the petitioner removed to Nigeria, and denied his request for voluntary departure.

The petitioner filed a timely appeal with the BIA and, a month later, divorced Olujoke. Three months thereafter, he married Sandra Hannah, a United States citizen. He then filed a motion to remand so that he might seek adjustment of status based on the combination of (i) the approved I-140 visa application submitted by his employer and (ii) his marriage to a Untied States citizen. As part of his proffer, the petitioner asseverated that

deportation to Nigeria would impose extreme hardship upon his new bride, who allegedly suffered from a kaleidoscopic array of medical and psychological disorders.

In January of 2004, the BIA upheld the IJ's determinations and rejected the petitioner's merits appeal. It simultaneously denied his motion to remand. On that score, the BIA noted that the petitioner had married his new wife "a mere 7 months" after he was ordered removed by the IJ and explained that the petitioner's "lack of credibility at his hearing, his prior use of fraudulent documents, his previous marital history and the timing of his current marriage" argued persuasively against an affirmative exercise of its discretion to reopen the proceedings. This petition for judicial review followed.

The petitioner seeks judicial review of the BIA's denial of his motion to remand — no more and no less.[3] In that motion, he asked the BIA to remand the matter to the IJ in order to allow him to pursue an adjustment of status. Neither the INA nor the BIA's rules of practice recognize motions to remand as such. Here, however, the motion to remand was plainly in the nature of a motion to reopen the proceedings before the IJ (the IJ originally adjudged him ineligible for relief in part because he lacked a qualifying citizen relative; once he had married a United States citizen, he

_____

[3]Given the circumscribed nature of the relief requested, we need not address the BIA's affirmance of the decision to deny asylum, withholding of removal, and protection under the CAT.

-6-

sought to present fresh evidence of his newfound eligibility for an adjustment of status). The BIA, therefore, properly treated the motion to remand as a motion to reopen. See In re Coelho, 20 I. & N. Dec. 464, 471 (BIA 1992). So do we.

Motions to reopen are disfavored in immigration practice because of the compelling public interests in finality and the expeditious processing of proceedings. INS v. Abudu, 485 U.S. 94, 107 (1988); Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003). The granting or denial of such a motion is discretionary. See INS v. Doherty, 502 U.S. 314, 323 (1992). At a bare minimum, the movant must make a showing of prima facie eligibility for the relief that he seeks. See, e.g., Afful v. Ashcroft, 380 F.3d 1, 8 (1st Cir. 2004). He also must show that the evidence sought to be introduced on remand is material and that it was not previously available. See 8 C.F.R. § 1003.2(c)(1); see also Fesseha, 333 F.3d at 20. Even if he satisfies these threshold conditions, he is not home free; he still must persuade the BIA to exercise its discretion affirmatively and order the case reopened. See 8 C.F.R. § 1003.2(a); see also Abudu, 485 U.S. at 105.

We review the BIA's denial of a motion to reopen for abuse of discretion. See Jupiter v. Ashcroft, 396 F.3d 487, 490 (1st Cir. 2005). This means that we will interfere with the BIA's disposition of such a motion only if the petitioner can establish that the BIA made an error of law or acted in a manner that is

fairly characterizable as arbitrary or capricious. See Carter v. INS, 90 F.3d 14, 17 (1st Cir. 1996); see also Henry v. INS, 74 F.3d 1, 4 (1st Cir. 1996) (explaining that the BIA may abuse its discretion by "neglecting to consider a significant factor that appropriately bears on the discretionary decision, by attaching weight to a factor that does not appropriately bear on the decision, or by assaying all the proper factors and no improper ones, but nonetheless making a clear judgmental error in weighing them"). In conducting this deferential review, we must keep in mind that the usual reasons for ceding deference to agency decisionmaking on similar motions in other administrative contexts have special force in the immigration context. See Abudu, 485 U.S. at 110.

We assume, for argument's sake, that the petitioner made the required showing of prima facie eligibility for an adjustment of status. His marriage to a United States citizen, if bona fide, rendered him presumptively eligible for such an adjustment. See 8 U.S.C. § 1182(i) (authorizing a waiver of inadmissibility for fraud or willful misrepresentation if the Attorney General determines that the alien's removal from the United States would result in extreme hardship to the alien's citizen spouse). Moreover, evidence of such a union is material to the relief sought (i.e., it has the potential to influence the outcome of the application for an adjustment of status) and, inasmuch as the nuptials occurred

-8-

after the IJ's decision, that evidence was unavailable during the original hearings.

Given these assumptions, this case turns on the BIA's negative exercise of its discretion. We discern no abuse. Although the BIA did not make a specific "sham marriage" finding, it made pellucid its grave doubts as to the suspicious timing of the petitioner's marriage to Hannah and the genuineness of that marriage. It then cited, as aggravating factors, the petitioner's persistent use of fraudulent documents, his checkered marital history, and his overall lack of credibility.

We view these facts as relevant and the BIA's reliance on them as reasonable. The key is the adverse credibility finding — a finding that derives ample support from the record. The petitioner's actions showed quite clearly that he had no compunctions about using bogus documentation (and, thus, about dissembling in an effort to evade the immigration laws). His course of conduct gave rise to a plausible inference — an inference that the IJ chose to draw — that he viewed marriage less as a sacrament and more as a tool for ensuring continued residency in the United States. And, finally, his demeanor on the witness stand and his evasiveness in the face of close questioning were, as the IJ noted, telling indicia of a lack of forthrightness. Perhaps the most glaring examples are his convenient memory loss when queried

about his first marriage and his attempts to "coach" Olujoke when she testified in his behalf.

The short of it is that the adverse credibility finding was fully supported. That finding undermined not only the petitioner's case in chief but also his motion to remand. There was, therefore, a sound and wholly rational predicate for the BIA's negative exercise of its discretion. See Krazoun v. Ashcroft, 350 F.3d 208, 212 (1st Cir. 2003).

In arguing for an opposite conclusion, the petitioner makes two points that warrant brief rebuttal. First, he invites us to hold that this case is controlled by In re Velarde-Pacheco, 23 I. & N. Dec. 253 (BIA 2002), in which the BIA granted a motion to reopen proceedings pending adjudication of an I-130 visa application. We decline the invitation because the two cases are not fair congeners. In Velarde-Pacheco, unlike in this case, the petitioner (whom the BIA deemed credible) had established the bona fides of his marriage to a United States citizen by clear and convincing evidence. See id. at 256. Even then, the BIA emphasized that the grant of relief was entirely a matter of discretion. Id.

Second, the petitioner claims that the BIA overlooked factors that speak in favor of granting him relief. These include his record of steady employment, his lack of a criminal record, the positive impact he has had on Hannah's life, and his acquiescent

participation in immigration proceedings. We readily agree that these are mitigating factors, but it is sheer conjecture to say that the BIA overlooked them. The petitioner's remonstrance, then, reduces to a claim that the BIA attached insufficient weight to these mitigating factors.

We reject that claim. The BIA, in evaluating a motion to reopen, must consider the record as a whole. Zhao v. U.S. Dep't of Justice, 265 F.3d 83, 97 (2d Cir. 2001). Thus, its exercise of discretion typically will entail the weighing of multiple factors, not all of which point in the same direction. See Chen v. INS, 87 F.3d 5, 7 (1st Cir. 1996). Here, the mitigating factors marshaled by the petitioner simply do not, either as a matter of law or as a matter of logic, so overbalance the adverse factors emphasized by the BIA as to require a finding of misused discretion. See Henry, 74 F.3d at 4 (stating that a finding of abuse of discretion, under such circumstances, requires a showing that the BIA made "a clear judgmental error in weighing [competing factors]") (emphasis supplied).

We need go no further. On this record, the BIA acted well within the realm of its discretion in rejecting the petitioner's motion to remand the proceedings.

**The petition for review is denied**.