# United States Court of Appeals
## For the First Circuit

No. 06-1672

MUDASER RAZA,

Petitioner,

v.

ALBERTO R. GONZALES, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE BOARD

OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Selya and Stahl, Senior Circuit Judges.

Marshall A. Mintz on brief for petitioner.
Peter D. Kessler, Assistant Attorney General, Civil Division,
Mark Walters, Assistant Director, Office of Immigration Litigation,
and Dalin R. Holyoak, Trial Attorney, United States Department of
Justice, on brief for respondent.

April 19, 2007

**SELYA**, **Senior Circuit Judge**. The petitioner seeks judicial review of a decision of the Board of Immigration Appeals (BIA) denying his motion to reopen a removal proceeding. He asserts that the BIA abused its discretion by failing to consider changed circumstances in his homeland and, instead, ruling that his motion was numerically and temporally barred. Discerning neither an abuse of discretion nor an error of any kind, we deny the petition.

The basic facts are relatively straightforward. The petitioner, Mudaser Raza,[1] is a twenty-seven-year-old Pakistani national who unlawfully entered the United States in the fall of 2000. On December 6, 2000, the authorities arrested the petitioner and initiated a removal proceeding.

In an appearance before an immigration judge (IJ) on November 29, 2001, the petitioner conceded removability and applied for an adjustment of status based on an ostensible marriage to an American citizen. On July 2, 2002, the IJ pretermitted this application, finding that the petitioner had lied, had submitted false documents, and in any event, had failed to satisfy the requirements of the applicable adjustment of status statute. See 8 U.S.C. § 1255(a). Accordingly, the IJ ordered removal.

---

[1]The record reflects various spellings of the petitioner's first name. For simplicity's sake, we use the spelling employed in the petitioner's brief.

The petitioner did not perfect an appeal of this removal order to the BIA. That lapse did not signal the end of the matter, however; a month after the appeal period had expired, the petitioner asked the BIA to remand his case to the IJ. The BIA denied the motion to remand on December 23, 2003.

On March 22, 2004, the petitioner lodged another motion with the BIA. This motion, denominated as a motion to reopen the removal proceeding, hinged on a claim that he had remarried. The BIA denied the motion on May 10, 2004, concluding that the petitioner was not eligible for adjustment of status as he was not legally admitted into the United States and that, in any event, he had failed to make a showing sufficient to warrant reopening. See id. § 1255(a); 8 C.F.R. § 1003.2. The petitioner accepted this rebuff without seeking judicial review.

On October 17, 2005, the petitioner filed yet another motion to reopen. In this filing, he alleged that, after his arrival in the United States, he had apostatized his former Sunni Islam faith and become an adherent of the Shia Islam faith. He offered no dates or details in support of these bare assertions, nor did he furnish any evidence corroborating his claimed conversion. He further averred — again, without corroboration — that his Sunni Muslim family members in Pakistan had not only disowned him but also had threatened him with harm. He said that he feared what they might do upon his return. Finally, he claimed

that sectarian violence against Shiite Muslims had escalated in Pakistan, and that this change in country conditions substantiated his fear of persecution incident to forced repatriation. To support that claim, the petitioner proffered a series of internet articles describing contemporaneous country conditions in Pakistan.

On March 27, 2006, the BIA denied the petitioner's motion to reopen. It noted that the motion was successive as well as untimely and, thus, subject to dismissal on numerical and temporal grounds. Weighing the propriety of a possible exception to these procedural bars, the BIA determined that the motion (i) rested "upon mere speculation about what may happen to [the petitioner] upon his return" and (ii) failed to make out a prima facie case of eligibility for either asylum or withholding of removal. Accordingly, the BIA concluded that the motion did not fall within the scope of any recognized exception to the numerical and temporal limitations and, so, denied the petitioner's motion. This timely petition for judicial review followed.

We preface our inquiry into the correctness of the BIA's ruling with a précis of the applicable legal standards. Motions to reopen removal proceedings are disfavored as contrary to "the compelling public interests in finality and the expeditious processing of proceedings." Roberts v. Gonzales, 422 F.3d 33, 35 (1st Cir. 2005) (quoting Falae v. Gonzales, 411 F.3d 11, 14-15 (1st Cir. 2005)). As a result, the BIA enjoys considerable latitude in

deciding whether to grant or deny such a motion. See INS v. Doherty, 502 U.S. 314, 323 (1992). Judicial review of such decisions is solely for abuse of discretion. See Roberts, 422 F.3d at 35; Falae, 411 F.3d at 14. This means, in effect, that such a decision will stand unless the complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way. See Maryam v. Gonzales, 421 F.3d 60, 62 (1st Cir. 2005); Wang v. Ashcroft, 367 F.3d 25, 27 (1st Cir. 2004).

A maze of regulations affects the conduct of removal proceedings. Under this regulatory scheme, an alien ordinarily may file only a single motion to reopen a removal proceeding — and that motion must be submitted within ninety days of the rendition of the final administrative decision. See 8 C.F.R. § 1003.2(c)(2). This means that motions to reopen are limited both numerically (one to a customer) and temporally (a ninety-day window).

The petitioner concedes that the motion sub judice fails to meet these requirements. Numerically, this is his second such

motion;[2] temporally, the motion was filed more than ninety days after the final administrative decision ordering his removal.

These numerical and temporal limitations are not absolute. Of particular pertinence here, a showing of exceptional circumstances may operate to relax them. See id. § 1003.2(c)(3); see also Roberts, 422 F.3d at 36. Under this rubric, the agency may waive numerical and temporal bars to reopening if an alien makes a convincing demonstration of changed conditions in his homeland. Those changes, however, must be material to the underlying substantive relief that the alien is seeking (here, asylum or withholding of removal) and the evidence tendered in support thereof must have been unavailable during the prior proceedings. See 8 C.F.R. § 1003.2(c)(3)(ii). Moreover, such a showing requires more than a conclusory claim that the sky is falling: the evidence proffered in support of the motion must, at a bare minimum, establish a prima facie case sufficient to ground a claim of eligibility for the underlying substantive relief. See INS v. Abudu, 485 U.S. 94, 104 (1988); Maryam, 421 F.3d at 62.

---

[2]Actually, this may well be the petitioner's third motion to reopen. The government contends, with some force, that the petitioner's initial motion to remand, regardless of its label, in fact constituted a motion to reopen. In that case, the motion under review here would be the petitioner's third motion to reopen. Because it makes no difference to the outcome of this proceeding whether the current motion is the petitioner's second or third motion to reopen, we do not pursue this line of inquiry.

Against this backdrop, we return to the case at hand. The petitioner asseverates that the BIA failed to appreciate the significance of, or even address, the proffered evidence of changed country conditions. Building on this foundation, he argues that this failure, which cemented into place the BIA's decision to deny his motion to reopen as numerically and temporally barred, constituted an abuse of discretion. The record, however, belies the foundational premise on which this argument rests: it shows beyond any peradventure of doubt that the BIA took cognizance of the petitioner's proffer and adequately explained why the conclusion that the petitioner urged should not carry the day.

The BIA's memorandum of decision tells the tale. In that rescript, the BIA explicitly acknowledged the petitioner's claim that his case fit within the "changed circumstances" exception to the numerical and temporal limitations. It then limned the relevant legal standard, considered the petitioner's allegations (including those pertaining to conversion and evolving country conditions), and found those thinly supported allegations insufficient to bring the exception into play. In the process, the BIA observed that the "country conditions information" did not specifically refer to the petitioner and that in several critical aspects the motion was "based upon mere speculation about what may happen to the [petitioner] upon his return" to Pakistan. Thus, notwithstanding the contents of his proffer, the petitioner had

failed to meet the requirements for an exception to the numerical and temporal limitations.

We discern no flaw in the BIA's analysis. An agency is not required to dissect in minute detail every contention that a complaining party advances. It is enough if the agency fairly considers the points raised by the complainant and articulates its decision in terms adequate to allow a reviewing court to conclude that the agency has thought about the evidence and the issues and reached a reasoned conclusion. See Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 285-286 (1974); see also Mansour v. INS, 230 F.3d 902, 908 (7th Cir. 2000) (explaining that the decision must be sufficient to show that the BIA did not "merely react[]"). The BIA's decision in this case satisfies that standard.

Alternatively, the petitioner argues that, even if the BIA did not ignore his proffer, it nonetheless abused its discretion in denying the motion to reopen. Even without regard to numerical and temporal limitations, an alien making such an argument must overcome the obstacle imposed by a "highly deferential" standard of review. Roberts, 422 F.3d at 35. In this instance, the petitioner cannot surmount that obstacle. As we explain below, the BIA's determination that he failed to make out

a prima facie case of eligibility for appropriate substantive relief seems unimpugnable.[3]

We start with the petitioner's claim that he had made out a case of eligibility for asylum. To qualify for asylum, an applicant must demonstrate a well-founded fear of persecution on account of one of five enumerated grounds, namely, "race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.13(b)(2)(A). Neither the statute nor the regulations defines "persecution" for purposes of asylum, and this court has opted to decide the question of what constitutes persecution case by case. See, e.g., Orelien v. Gonzales, 467 F.3d 67, 71 (1st Cir. 2006).

There are, however, some guiding principles. One of these guidelines is that persecution "always implies some connection to governmental action or inaction, related to a protected ground . . . ." Id. at 72. When an asylum claim focuses on non-governmental conduct, its fate depends on some showing either that the alleged persecutors are aligned with the government or that the government is unwilling or unable to control them. See id.

---

[3]We note in passing that, under the applicable regulations, the BIA would have had some leeway to deny the motion to reopen even if the petitioner had made out a prima facie case of eligibility for substantive relief. See 8 C.F.R. § 1003.2(a).

In the case at hand, the petitioner experienced no persecution while in Pakistan. His professed fear of future persecution arises out of the possibility of victimization as a result of his religious conversion. The motion papers, however, fail to intimate the slightest connection between the forecasted persecution and any governmental action or inaction. Indeed, the petitioner's principal claim is that he fears the wrath of his immediate family because of his apostasy. There is nothing of any substance to connect those possible depredations to the government. By the same token, there is nothing that might suffice to ground a finding — let alone to compel a finding — that the government is unable or unwilling to combat violence based on religious preference.

Nor do the internet articles regarding sporadic Sunni-Shiite violence establish a prima facie case of asylum eligibility. Even assuming that one accepts the petitioner's claim of conversion — and that claim is wholly uncorroborated — the fourteen articles that he has submitted refer generally to militant activity and episodic violence within Pakistan. This violence is not widespread but, rather, largely confined to the city of Karachi and Punjab province. Tellingly, the articles, taken as a group, make it pellucid that most of Pakistan's Sunnis and Shiites reside peacefully together. By definition, persecution has a systematic aspect; it requires more than a showing that scattered incidents of

violence or harassment are in prospect. See Palma-Mazariegos v. Gonzales, 428 F.3d 30, 37 (1st Cir. 2005). To cinch matters, the religiously inspired unpleasantness described in the fourteen internet articles is, like the feared wrath of the petitioner's family members, unconnected to the Pakistani government.

To say more would be supererogatory. On this exiguous showing, it cannot plausibly be said that the BIA abused its discretion when it concluded that the petitioner, in failing to demonstrate a reasonable possibility of persecution should he be returned to Pakistan, fell short of establishing a prima facie case of eligibility for asylum.

The other strain of substantive relief sought by the petitioner is withholding of removal. A claim for withholding of removal "carries with it a more stringent burden of proof than does a counterpart effort to obtain asylum." Orelien, 467 F.3d at 73 (citing Ang v. Gonzales, 421 F.3d 50, 58 (1st Cir. 2005)). Presumably for this reason, the petitioner makes no assertion that, if he failed to make out a prima facie case of eligibility for asylum, he somehow can be found to have made out a prima facie case of eligibility for withholding of removal.

We need go no further. The short of it is that the petitioner's motion to reopen was numerically and temporally barred. The BIA sufficiently addressed, and supportably rejected, the petitioner's argument that he qualified for an exception to

these numerical and temporal limitations.  Consequently, adhering to those bars did not, in the circumstances of this case, constitute an abuse of discretion.

**The petition for review is denied**.