**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 05-1983

NATALJA SERSNOVA

Petitioner,

v.

ALBERTO R. GONZALES, Attorney General,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Circuit Judge</u>,

John R. Gibson,[*] <u>Senior Circuit Judge</u>,

and Howard, <u>Circuit Judge</u>.

<u>Reynold E. Finnegan</u> and <u>Finnegan & Diba</u> on brief for petitioner.

<u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, <u>Terri J. Scadron</u>, Assistant Director, Office of Immigration Litigation, and <u>Lowell R. Stern</u>, Attorney, U. S. Department of Justice, on brief for respondent.

June 20, 2007

---

[*]Hon. John R. Gibson, of the Eighth Circuit, sitting by designation.

**JOHN R. GIBSON**, <u>Senior Circuit Judge</u>.    Natalja Sersnova, a noncitizen resident of Latvia, seeks review of a final order of the Board of Immigration Appeals denying her application for asylum and withholding of removal.  We deny review.

Sersnova contends that she has a well-founded fear of future persecution in Latvia on account of her Russian ethnicity. She testified that she was born in the Ukraine of a Ukrainian mother and a Russian father, but that she grew up in Latvia in an area populated mostly by ethnic Russians.  Her early schooling was conducted in Russian, although she studied Latvian and took Latvian language exams in 1997 and 1999, testing at the average level. After graduating from high school in 1998, she was admitted to the Latvian University of Agriculture, where the instruction was in Latvian.  She performed well there.  She worked as a census taker in Latvia.  Her parents and her brother continue to live in Latvia, where her father and brother are both employed.  Neither Sersnova nor her brother has ever been arrested in Latvia.

Sersnova testified that she never had applied for Latvian citizenship because she had not achieved the highest level on the Latvian language tests, which she said was a pre-requisite for citizenship.  Sersnova apparently did not retake the Latvian exam in 2000 after she finished two years of university level coursework conducted in Latvian.

She  testified  that  she  had  been  subjected  to

discrimination on the basis of her Russian ethnicity when people cursed at her on the street, threw rocks and bottles at the building where she lived, and refused to come to the door when she was working as a census taker. She said that her math teacher at the university had been hostile to her and refused to help her because she was Russian. She also said that one of her friends had been hit in the head with a bottle thrown from a bus because the friend had been speaking Russian.

Sersnova offered into evidence the State Department's 2002 Country Report on Latvia, which indicated that the Latvian language requirement for citizenship has been liberalized so that a high school language certificate now suffices. The same report indicated that the government has facilitated the naturalization process so that 95% of applicants now pass the exams on the first try.

The IJ found that none of the incidents recounted by Sersnova "come close" to establishing past persecution and that she did not establish a well-founded fear of future persecution. The IJ therefore denied her application for asylum, withholding of removal, and relief under the Convention Against Torture. He held that she could be removed to Latvia, and if Latvia would not accept her, she could be removed to Ukraine.

Sersnova appealed to the Board of Immigration Appeals. Her brief to the BIA included a request to the BIA to receive new

-3-

evidentiary materials not a part of the record before the IJ.  The BIA summarily affirmed the IJ's order without mentioning Sersnova's request to receive the new evidence.

On petition for review of the BIA's summary affirmance, we review the IJ's decision as if it were the decision of the BIA. Olujoke v. Gonzales, 411 F.3d 16, 21 (1st Cir. 2005).  We review the IJ's findings of fact for substantial evidence, upholding them unless the record evidence would compel any reasonable factfinder to make a contrary determination.  Id.

The IJ's findings that Sersnova has not suffered past persecution or shown a well-founded fear of future persecution are well supported by the record. Sersnova's description of her personal experiences does not show either that she has been subjected to treatment severe enough to constitute persecution or that she has reason to fear she would be subjected to such treatment if she returned to Latvia.  At most, she described a "general climate of discrimination," which does not suffice to establish persecution. See Attia v. Gonzales, 477 F.3d 21, 23-24 (1st Cir. 2007)(per curiam).  Her testimony that she would not be able to pass the Latvian language requirements for citizenship after having completed two years of college-level studies conducted in Latvian was contrary to the evidence in the State Department country report that she introduced.  We easily uphold the IJ's findings.

-4-

Sersnova also contends that the BIA erred in issuing its summary affirmance without noting specifically that it denied the "motion to expand record" included in her BIA appeal brief. The BIA does not find facts in the course of deciding appeals, except "for taking administrative notice of commonly known facts." 8 C.F.R. § 1003.1(d)(3)(iv). The BIA therefore need not consider evidence presented for the first time on administrative appeal. Bhanot v. Chertoff, 474 F.3d 71, 74 (2d Cir. 2007)(per curiam). "A party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion for remand." 8 C.F.R. § 1003.1(d)(3)(iv). Sersnova did not file such a motion, and therefore the BIA was not obliged to remand. Ye v. Dep't of Homeland Security, 446 F.3d 289, 296 (2d Cir. 2006).

Although the BIA arguably erred by not mentioning the request to expand the record in its summary affirmance, we conclude remand would be futile because the additional documents offered would not change the result. See Bhanot, 474 F.3d at 74; see also Hussain v. Gonzales, 477 F.3d 153, 158 (4th Cir. 2007); see generally NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969) (SEC v. Chenery Corp., 318 U.S. 80 (1943), does not require remand where it would be "an idle and useless formality."). Sersnova could have received a remand or reopening only if she had shown a prima facie case that she was eligible for the relief sought and if the evidence she sought to introduce was material and unavailable

during the earlier proceedings.  <u>Falae</u> v. <u>Gonzales</u>, 411 F.3d 11, 14 (1st Cir. 2005).  Dates on three of the documents Sersnova offered show they were publicly available in November 2003 during the hearing before the IJ, and a fourth is undated, but contains no information about events later than 1998.  The other news articles submitted have to do with protests over proposed measures such as limiting the amount of school instruction conducted in the Russian language, which does not threaten Sersnova personally since she successfully performed university studies with instruction in Latvian.  The 2003 State Department country report was consistent with the 2002 report before the IJ, except that the 2003 Report shows that an additional 10,403 non-citizens were naturalized during the intervening year, which of course undermines Sersnova's claim that she would not be able to become a citizen.  Because it is evident that the documents attached to Sersnova's BIA brief would not have been a basis for reopening her case, we decline to order a futile remand.

We deny review.