

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-4-2009

# Taseem Ahmed Malik v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2320

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Taseem Ahmed Malik v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1781.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1781

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 08-2320

———————

TASEEM AHMED MALIK,
                                        Petitioner
                    v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

———————

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A79-681-291
(U.S. Immigration Judge: Honorable Miriam K. Mills)

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 25, 2009

Before:  SCIRICA, Chief Judge, CHAGARES and ALDISERT, Circuit Judges.

(Filed: March 4, 2009)

———————

OPINION OF THE COURT

———————

PER CURIAM

Petitioner Taseem Ahmed Malik, a native and citizen of Pakistan, was admitted to

the United States on November 9, 2000 as a non-immigrant visitor, with authorization to

remain until March 15, 2002.  On March 20, 2003, the Department of Homeland Security

served him with a Notice to Appear, charging that he was removable under Immigration & Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as an overstay. At a master calendar hearing, he admitted the factual allegations and conceded that he was removable as charged. On June 27, 2005, Malik filed an application for asylum under INA § 208(a), 8 U.S.C. § 1158(a), and withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and for protection under the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, claiming a fear of persecution. In his asylum application, Malik asserted that he is a member of the small Hindko-speaking community in Karachi. The political party in power, the Mutahida Quami Movement ("MQM"), terrorizes them. He was an opponent of MQM in medical school. A couple of times he was threatened by them and also he was beaten once. In addition, he is a Sunni physician, and Shi'a extremists have been killing Sunni physicians in great numbers.

Malik's June 21, 2006 removal hearing testimony was largely consistent with his asylum application, except that he neglected to mention having been beaten once by MQM supporters. He is a licensed physician and a Sunni. He came to the United States to train for his medical residency. He testified that he did not get a residency and that is why he did not get the J-1 visa he wanted. He is afraid to return to Pakistan because physicians have been targeted and killed in great numbers on the basis of their religion and profession. Malik was born and raised in Karachi. His parents, three brothers, and one sister reside in Pakistan. One of his brothers is a doctor, another is a dentist, and the

2

third is studying law. Malik explained that he was unable to obtain corroboration of his claims from his brothers because, in October 2005, a tremendous earthquake hit the northern part of Pakistan, killing twenty-four members of his extended family, which traumatized his siblings.

Malik was questioned about his fear of MQM supporters, and he explained that he was asked to join the group during medical school, but refused to do so. He was "very vocal" against MQM's ideologies. A.R. 145. MQM is now "one of the biggest gangs in Karachi." A.R. 143. According to Malik, the MQM is also "in the government right now and their workers are everywhere in Karachi." A.R. 143. MQM supporters have acquired government positions, and will harm him if he returns to Pakistan. A.R. 146. MQM is "very ruthless" and he fears being targeted by them based on "his history" with them. Id.

The Immigration Judge placed into evidence the State Department 2005 Country Report for Pakistan, the 2005 International Religious Freedom Report for Pakistan, and various articles about Pakistan taken from the internet.

Following the merits hearing, the IJ denied relief. She concluded that the asylum application was not timely filed because it was filed nearly five years after Malik's entry into the United States. Malik did not qualify for a waiver of the one-year deadline, because his background evidence did not establish that conditions for Sunni physicians in

3

Pakistan had worsened.[1] On the contrary, in the 1990's, there were 60 murders of Shi'a physicians and 9 murders of Sunni physicians who probably were mistaken for Shi'a. The high number of murders of physicians to which Malik alluded occurred in the 1990's up through 2001, and, thus, there was no excuse for his delay until 2005 in filing the asylum application.

The IJ further concluded that Malik had not met his burden of proof with respect to withholding of removal, because his contentions of persecution were contradicted by his background evidence. Malik's background evidence indicated that Shi'a physicians, and not Sunni physicians, had been targeted by Sunni extremists.[2] There was no evidence that Sunni extremists were targeting physicians on the basis of their profession, and there was no evidence that Malik would be mistaken for a Shi'a. The General Secretary of the Pakistan Medical Association opined that the doctors killed were targeted because of their Shi'a religion and not because they were doctors. Furthermore, the IJ pointed to page 12 of the 2005 Religious Report, which indicated that "Shi'a leaders claimed that the targeted assassinations of professional members of their communities, particularly in

---

[1] If the alien can establish "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing the application," failure to file the application within the one year period may be excused. 8 U.S.C. § 1158(a)(2)(D).

[2] The IJ assumed for purposes of Malik's application that physicians might constitute a particular social group because of their social visibility. See generally Matter of C-A-, 23 I. & N. Dec. 951 (BIA 2006) ("The social visibility of the members of a claimed social group is an important consideration in identifying the existence of a 'particular social group' for the purpose of determining whether a person qualifies as a refugee.")

4

Karachi, virtually ended over the last year. They attributed this to Shi'a participation in the MMA and a generally improved relationship with Sunni sects." A.R. 141; see also A.R. 168.[3] Therefore, it was not likely that Malik, as a Sunni physician, would be targeted for murder. Further undermining Malik's claim of a well-founded fear of future persecution was the fact that his two brothers – one a dentist and the other a physician – remain in Pakistan and have suffered no harm since Malik's departure. The IJ concluded that Malik gave no reasonable explanation for his failure to corroborate his claims through these family members, who share his religion and social group. The IJ denied the CAT claim for lack of evidence, and ordered Malik removed to Pakistan.[4]

Malik appealed to the Board of Immigration Appeals, contending that the IJ overlooked the fact that he was beaten once by MQM supporters while in medical school, but the Board adopted and affirmed the IJ's decision on April 9, 2008. The Board agreed that Malik was statutorily ineligible for asylum, and agreed that he did not establish a clear probability that he would be persecuted on account of an enumerated ground, or tortured. With respect to the alleged beating, the Board noted that Malik made no reference to it while testifying. He only briefly mentioned it in his asylum application. Therefore, "in light of the vagueness of [Malik's] reference to this event, and in light of

---

[3] The MMA, or Muttahida Majlis-i-Amal, is a coalition of Islamic political parties.

[4] Malik did not argue the CAT issue in his brief on appeal and thus the issue is waived. See Laborers' Int'l Union of N. America. v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994).

5

his lack of testimony or detailed evidence regarding the alleged event and its implications for his claims for relief, we see no error in the Immigration Judge's conclusion that the respondent failed to meet the relevant burdens of proof." A.R. 2. Malik has timely petitioned for review of this decision.

We will deny the petition for review. We have jurisdiction generally to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1), and, here, to the extent that the Board deferred to the IJ's reasoning in part, we review the Board's decision but consider the IJ's as well as a matter of logic. See Abdulrahman v. Ashcroft, 330 F.3d 587, 591 (3d Cir. 2003). The determination that Malik delayed too long in applying for asylum, and that he did not show changed circumstances which materially affected his eligibility for asylum or extraordinary circumstances relating to the delay in filing the application, is unreviewable. 8 U.S.C. § 1158(a)(3); Sukwanputra v. Gonzales, 434 F.3d 627, 634 (3d Cir. 2006). The existence of these exceptions is a factual and discretionary determination over which we lack jurisdiction. See Chen v. U.S. Attorney Gen., 491 F.3d 100, 105 (3d Cir. 2007).[5]

The standard for withholding of removal under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), is: "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social

---

[5] Malik has not challenged the untimeliness determination on appeal in any event.

6

group or political opinion." The withholding of removal standard is more exacting than the asylum standard and requires the alien to show by a "clear probability" that his life or freedom would be threatened on account of a protected ground in the proposed country of removal. Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407 (1984). See also Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987) ("would be threatened" standard has no subjective component). The Board's findings of fact in this regard "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). See also Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Under this deferential standard, the petitioner must establish that the evidence does not just support a contrary conclusion but compels it. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

Malik contends that he fears persecution should he return to Pakistan, because he is a Sunni physician and Shi'a extremists have murdered Sunni physicians in large numbers. As explained by the IJ, however, his background evidence establishes that, during the time period when physicians were being murdered by extremists, the murderers were Sunni, and not Shi'a, extremists. In one article titled "Doctors Under Fire," published in August 2001, the author reported that the Pakistan Medical Association ("PMA") had stated that 70 physicians had been assassinated in Karachi in the preceeding ten years. A.R. 175. In 2001, four doctors were murdered during a six-week period. Id. The PMA acknowledged, however, that the murders were caused by sectarian strife.

7

Malik asserts, as he did before the Board, that there were more than 125 deaths from sectarian violence caused by the terrorist group Lashkar-i-Jhnagvi, but he neglects to mention that this is a *Sunni* terrorist group. A.R. 178. Thus, substantial evidence supports the IJ's determination, as affirmed and adopted by the Board, that the withholding of removal standard has not been met with respect to Malik's allegations involving both religion and a "particular social group." Elias-Zacarias, 502 U.S. at 481.

Malik also contended that he is a Hindko-speaking, vocal opponent of MQM. (The MQM is an Urdu-speaking party.) Nevertheless, Malik's testimony concerning his opposition to MQM was vague, and he alleged only some minor threats and one beating on account of his status as a Hindko-speaking minority in Karachi. This is insufficient to establish persecution. See Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) (single beating that does not result in a serious physical injury does not compel reversal of the Board's decision that alien did not suffer past persecution). In his brief Malik cites to the Country Report and points to various incidents of sectarian violence in Pakistan, but this evidence does not support his claim that MQM will harm him. Evidence of sectarian violence affecting all citizens is insufficient to establish persecution. Cf. Raza v. Gonzales, 484 F.3d 125, 129 (1st Cir. 2007) (addressing an asylum application involving sectarian violence in Pakistan). Again, substantial evidence supports the conclusion that Malik failed to show a clear probability that his life or freedom would be threatened on account of his political views if he returned to Pakistan.

8

The IJ concluded that Malik gave no reasonable explanation for his failure to corroborate his claims through his family members. Although the applicant's credible testimony "may be sufficient to sustain the burden of proof without corroboration," the Board may hold a failure to corroborate against an alien when (1) it is reasonable to expect corroboration and (2) the alien lacks a satisfactory explanation for not corroborating. Abdulai v. Ashcroft, 239 F.3d 542, 552-53 (3d Cir.2001). Malik's removal hearing took place on June 11, 2006, within the first year after the most devastating earthquake to hit Pakistan in many years. Malik testified that his brothers were depressed and fearful, and often away at the Northwest Frontier, and could not send affidavits because his family lost 24 members when his home town was destroyed by the earthquake. A.R. 132-33. We thus doubt that Malik's explanation that his brothers were too busy and too depressed to help him at that time was insufficient. Nevertheless, although the IJ may have erred in declaring Malik's explanation insufficient, the fact remains that his proof was insufficient to show a clear probability that his life or freedom would be threatened if he returned to Pakistan, and he still has not submitted anything from family members to corroborate any aspect of his claim.[6]

_____

[6] Finally, we note that the administrative record contains documents pertaining to the attorney disciplinary proceedings brought against Malik's former counsel. A.R. 5-28. On November 8, 2007, that attorney was suspended from practicing law before the Board and immigration courts for a term of sixty days, and was reinstated to practice on February 8, 2008. A.R. 6, 28. It does not appear that Malik's former counsel was suspended from practicing law when she represented him, and Malik raises no argument regarding the representation provided by his former counsel.

9

For the foregoing reasons, we will deny the petition for review.