# United States Court of Appeals
## For the First Circuit

No. 15-1918

XIAO HE CHEN and LING YU LUO,

Petitioners,

v.

LORETTA E. LYNCH, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Howard, <u>Chief Judge</u>,
Selya and Lynch, <u>Circuit Judges</u>.

<u>Gary J. Yerman</u> on brief for petitioners.
<u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General, <u>Terri J. Scadron</u>, Assistant Director, Office of Immigration Litigation, Civil Division, United States Department of Justice, and <u>Christina P. Greer</u>, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

June 9, 2016

**SELYA**, **Circuit Judge**.  The sole question in this immigration case is whether the Board of Immigration Appeals (BIA) abused its discretion in declining to reopen the petitioners' removal proceedings.  We answer that question in the negative and deny the petition for judicial review.

The historical facts and travel of the case are susceptible to succinct summarization.  The petitioners (Xiao He Chen and her husband, Ling Yu Luo) are Chinese nationals.  Early in 2000, Chen entered the United States illegally.  Her husband, Luo, followed on October 17, 2002, entering the country by means of a visitor's visa that granted him permission to remain until April 16, 2003.  Luo overstayed, and the couple married on December 18, 2008.  Meanwhile, Chen became an active participant in the China Democracy Party Foundation (CDP), a group committed to political reform in China.  Luo also became a member of the CDP.

In 2009, federal authorities instituted removal proceedings against both petitioners.  Later that year, the petitioners conceded removability, and an immigration judge (IJ) found Chen removable under 8 U.S.C. § 1182(a)(6)(A)(i) (for being present in the United States without having been lawfully admitted or paroled) and found Luo removable under 8 U.S.C. § 1227(a)(1)(B) (for remaining in the United States longer than permitted).

What remained were the petitioners' applications for asylum, withholding of removal, and protection under the United

Nations Convention Against Torture (CAT).[1] These entreaties centered on the petitioners' claim that, if repatriated, they would be subject to persecution (or worse) because of their pro-reform political activities in the United States.

Following a merits hearing held on May 10, 2010, at which Chen (but not Luo) testified, the IJ delivered a bench decision denying all three kinds of requested relief. The IJ did not find Chen credible, did not find the evidence sufficient to support asylum, and did not find that the petitioners had carried their burden of proving either of their other claims.

The petitioners unsuccessfully appealed to the BIA. When notified of the BIA's decision, they abjured judicial review and instead filed a timely motion to reopen and reconsider. They submitted an amended motion on January 30, 2012, attaching a variety of supporting documents. The BIA denied the amended motion on May 21, 2012. Once again, the petitioners eschewed the filing of a petition for judicial review.

Roughly three years passed. In the spring of 2015, the petitioners filed a second motion to reopen. They argued changed country circumstances and attached a trove of documents (including country conditions reports, news articles, and family

---

[1] The record is unclear as to whether Chen applied for these forms of relief and named Luo as a derivative beneficiary or whether both petitioners applied. In the present posture of the case, we need not resolve that uncertainty.

correspondence).  The BIA denied the motion, concluding that it was time-and-number barred and that the "changed country circumstances" exception did not apply.  The petitioners then filed the instant petition for judicial review.

We need not tarry.  The petition before us solicits our review of the BIA's order denying the latest motion to reopen.  Motions to reopen are disfavored in immigration practice, and for good reason: there is a compelling public interest in both finality and the expeditious processing of immigration proceedings.  See INS v. Abudu, 485 U.S. 94, 107 (1988); Falae v. Gonzales, 411 F.3d 11, 14 (1st Cir. 2005).  As a result, the BIA "enjoys considerable latitude in deciding whether to grant or deny such a motion." Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007).  Consequently, we review the BIA's denial of a motion to reopen solely for abuse of discretion.  See INS v. Doherty, 502 U.S. 314, 323 (1992); Zhang v. INS, 348 F.3d 289, 292 (1st Cir. 2003).  Under that deferential standard, we will affirm the BIA's order unless the petitioners show "that the BIA committed an error of law or 'exercised its judgment in an arbitrary, capricious, or irrational way.'"  Jutus v. Holder, 723 F.3d 105, 110 (1st Cir. 2013) (quoting Raza, 484 F.3d at 127).

For present purposes, it is important to note that this case involves the disposition of the petitioners' second motion to reopen.  An alien who aspires to reopen removal proceedings is

- 4 -

usually limited to only a single motion to reopen, which must be filed within 90 days of the final agency order.  See 8 C.F.R. § 1003.2(c)(2).  These time and number restrictions may be relaxed, however, when the alien establishes that "changed circumstances have arisen in the country of nationality or in the country to which deportation has been ordered."[2]  Larngar v. Holder, 562 F.3d 71, 74 (1st Cir. 2009) (citing 8 C.F.R. § 1003.2(c)(3)(ii)).

The petitioners attempt to avoid the time-and-number bar by invoking this exception.  To carry the day, an assertion of changed country circumstances must satisfy two substantive requirements.  We limn those requirements.

The first requirement necessitates a showing that the evidence offered in support of the alien's motion to reopen is material and was not previously available.  See 8 C.F.R. § 1003.2(c)(1), (c)(3)(ii); see also Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003).  In determining whether this requirement is satisfied, the BIA "compare[s] the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing below."  Haizem Liu v. Holder, 727 F.3d 53, 57 (1st Cir. 2013) (citing In re S-Y-G-, 24 I&N Dec. 247, 253 (BIA 2007)).  If the newly submitted evidence reveals no more than

_____

[2] Here, the petitioners' country of nationality and the country to which deportation has been ordered are one and the same: the People's Republic of China.

- 5 -

a continuation of previously existing conditions, it is inadequate to show changed country circumstances. See Sugiarto v. Holder, 761 F.3d 102, 104 (1st Cir. 2014); see also Fen Tjong Lie v. Holder, 729 F.3d 28, 31 (1st Cir. 2013).

To satisfy the second requirement, the alien must make a showing of prima facie eligibility for the ultimate relief that she seeks (in this instance, asylum, withholding of removal, and CAT protection). See, e.g., Afful v. Ashcroft, 380 F.3d 1, 8 (1st Cir. 2004). Even then, the alien must persuade the BIA to exercise its discretion favorably and order her case reopened. See 8 C.F.R. § 1003.2(a).

Here, the petitioners argue that the evidence submitted in support of their second motion to reopen demonstrated changed country circumstances, namely, persecution in China of persons who had operated as pro-democracy activists while in the United States. In an effort to make this showing, they proffered two types of evidence. First, they submitted correspondence and other documents, purportedly from Luo's brother, relating to events that he allegedly experienced in China. Second, they submitted reports (from, inter alia, government agencies and media outlets) describing general conditions in China. As we explain below, the BIA did not act arbitrarily, capriciously, or irrationally in holding that neither evidentiary proffer sufficed to demonstrate a material change in country circumstances.

- 6 -

With respect to the first part of the petitioners' proffer, the BIA supportably concluded that the materials submitted (which consisted of a letter detailing the alleged experiences of Luo's brother in China, an arrest warrant, and an injury report) lacked satisfactory authentication and, thus, lacked probative value. That conclusion was well within the broad compass of the BIA's discretion: there was nothing either in the materials themselves or elsewhere in the record that furnished even a shred of independent verification for the account attributed to Luo's brother. And as we previously have explained, "[t]he BIA has general discretion to deem a document's lack of authentication a telling factor weighing against its evidentiary value." Hang Chen v. Holder, 675 F.3d 100, 107 (1st Cir. 2012); accord Liu, 727 F.3d at 56-57 (1st Cir. 2013); Le Bin Zhu v. Holder, 622 F.3d 87, 92 (1st Cir. 2010).

To be sure, the petitioners point to Chen's affidavit as a means of authenticating the letter supposedly sent by Luo's brother. That gambit fails. In the underlying proceeding, the IJ found Chen's testimony unworthy of credence. That is significant because special respect is due to the BIA's refusal to credit an attempt at authentication by a witness whom the IJ earlier found incredible.[3]  See Le Bin Zhu, 622 F.3d at 92; Qin Wen Zheng v.

_____

[3] We note, moreover, that the petitioners cite no authority for the proposition that, in the absence of a proper foundation,

Gonzales, 500 F.3d 143, 146-47 (2d Cir. 2007); cf. Zheng v. Mukasey, 546 F.3d 70, 72 (1st Cir. 2008) (noting that, in the absence of substantiation, "self serving affidavits from petitioner and [his] immediate family are of limited evidentiary value").

The inclusion of the arrest warrant and the injury report in the letter attributed to Luo's brother does not advance the petitioners' cause. Without the letter, these documents have no independent probative value. And in all events, the arrest record and injury report are purportedly official documents, which themselves needed authentication. See 8 C.F.R. § 1287.6 (requiring, at a minimum, that such documents be "attested by an officer so authorized"). They lacked any such authentication. For these reasons, we conclude that the BIA did not abuse its discretion in according these unauthenticated documents little weight.

This leaves the second type of evidence: general reports from, inter alia, government agencies and news media describing overall conditions in China. When compared to the evidence presented at the 2010 merits hearing, this newly submitted evidence

_____

a statement in Chen's affidavit could suffice to authenticate a foreign document that she played no role in either creating or obtaining. Cf. United States v. Jackson, 636 F.3d 687, 693-94 (5th Cir. 2011) (concluding that police officer could not testify about proffered documents without adequate foundation allowing him to authenticate them).

falls short of showing changed country circumstances in China vis-à-vis the treatment of returnees who had previously been active in the CDP (or any comparable organization) while abroad. The materials describe conditions in China (including deviations from the rule of law and human rights violations) at a high level of generality. And even though they allude to the suppression of certain pro-democracy activists in China, none of these dissidents is identified as a person returning from abroad. Nor do they indicate that the level of suppression of pro-democracy activists intensified between 2010 (when the merits hearing concluded) and 2015 (when the second motion to reopen was filed).

The petitioners suggest that the BIA overlooked potentially significant evidence. This suggestion is woven entirely out of wispy strands of speculation and surmise. The BIA need not "discuss each piece of evidence individually." Liu, 727 F.3d at 57. Nor is it "required to dissect in minute detail every contention that a complaining party advances." Raza, 484 F.3d at 128.

In a last-ditch endeavor to turn the tide, the petitioners advance a curious claim. The BIA blundered, they say, by resolving the question of changed country circumstances without considering the findings contained in the State Department's 2009 Human Rights Report (the most recent report of its kind extant at the time of the 2010 merits hearing). But the petitioners never

introduced that report into the record, nor did they ever request that the BIA take judicial notice of it. Thus, any claim based on the contents of the 2009 Human Rights Report was not properly exhausted and, accordingly, cannot be broached in this proceeding.[4] See 8 U.S.C. § 1252(d)(1); Ahmed v. Holder, 611 F.3d 90, 97 (1st Cir. 2010).

The bottom line is that the materials submitted with the petitioners' second motion to reopen failed to show that Chinese officials specially targeted political activists who operated in the United States and then returned to China. Nor do those materials show any meaningful change in the Chinese government's posture either with respect to such matters or with respect to the suppression of political dissent generally from 2010 to 2015.

We need go no further. After reviewing the record in this case with care, we conclude that the BIA did not abuse its discretion in holding that the petitioners failed to make an adequate showing of a material change in country circumstances. It follows that the petitioners' second motion to reopen was, as the BIA ruled, time-and-number barred. We therefore deny the petition for judicial review without reaching the issue of whether

---

[4] Although the BIA has the power to take administrative notice of the contents of official documents, it is not required to do so sua sponte. See 8 C.F.R. § 1003.1(d)(3)(iv).

the petitioners have carried their burden of showing a prima facie case for merits relief.[5]

**So Ordered.**

---

[5] The petitioners also assert that the BIA ought to have reopened their case sua sponte. Because their opening brief fails to make any developed argument in this regard, we deem their assertion waived. See Ahmed, 611 F.3d at 98 (noting the "venerable precept that appellate arguments advanced in a perfunctory manner, unaccompanied by citations to relevant authority, are deemed waived").