**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 5, 2011
Decided October 17, 2011

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 11-1082

| | |
|---|---|
| QIAO LING LIN,<br>    *Petitioner*, | Petition for Review of a Decision of the<br>Board of Immigration Appeals. |
| *v.* | No. A 097 324 231 |
| ERIC H. HOLDER, JR.,<br>Attorney General of the United States,<br>    *Respondent*. | |

**O R D E R**

Qiao Ling Lin, a citizen of China, petitions for review of a decision of the Board of Immigration Appeals denying her motion to reopen her asylum proceedings as untimely. Lin contends that the Board abused its discretion by ignoring and discounting evidence she submitted of changed country conditions that would excuse the otherwise untimely filing of her motion. Although the Board failed to address some of her evidence and discounted evidence that arguably deserved more weight, its decision was not an abuse of discretion. The Board demonstrated that it was aware of all of her evidence, and it reasonably concluded that this evidence did not show changed country conditions that warrant reopening. We deny the petition for review.

Lin entered the United States at Chicago in 2003 using a Japanese passport in someone else's name. She was detained and immediately requested asylum. She said that authorities in her native Fujian Province had persecuted her for practicing Christianity. At a hearing in late December 2003, the immigration judge gave Lin two weeks to file a completed asylum application. She apparently did not do so, and the IJ informed her at a hearing that he considered her request for asylum abandoned and withdrawn.

Lin appealed to the Board. Her attorney asserted without support that he had filed Lin's completed application. The Board, however, found no evidence that any application had been submitted and upheld the IJ's decision. For reasons not apparent in the record, Lin was then released from DHS custody. Lin has since given birth to two children.

In 2010, Lin moved to reopen her asylum proceedings on the ground that conditions in China had materially changed. She argued that persecution of Christians had increased and that enforcement of China's family-planning policy had become more stringent and coercive, particularly in Fujian. She feared that if returned to China she would be forcibly sterilized for having two children and would be persecuted for her religious affiliation.

In support of her motion to reopen, Lin submitted more than 1000 pages of previously unavailable evidence. This evidence includes (1) an expert report from Dr. Flora Sapio, a lecturer from the Centre of Advanced Studies on Contemporary China at the Julius-Maximilians University, criticizing the State Department's 2007 Profile of Asylum Claims and Country Conditions for downplaying the coerciveness of China's family-planning policy; (2) the 2008 and 2009 reports of the Congressional-Executive Commission on China (CECC),[*] which describe coercive enforcement of China's family-planning policy as "commonplace" and explain that compulsory abortion and sterilization are part of the official policy in Fujian and other provinces; (3) Chinese-government documents saying that some children who are born abroad to Chinese parents are counted for family-planning purposes; (4) correspondence between Lin and her locality's family-planning office stating that she would be a "target to undergo sterilization" if she returned to China; (5) firsthand accounts accompanied by "sterilization certificates" from women in Changle City who claim to have been forcibly sterilized in recent years; (6) a 2007 report from the Australian Refugee Review Tribunal on China's treatment of Christians; and (7) an article from *Christianity Today* describing recent mistreatment of Christians in China. To establish that conditions in China related to family-planning were milder at the time of her original asylum application than they are today, Lin submitted an earlier decision of the Board, *In re*

---

[*] Congress created the bipartisan CECC in 2000 "to monitor human rights and the development of the rule of law in China." http://www.cecc.gov/.

*J-W-S*, 24 I. & N. Dec. 185, 193 (2007), which described family-planning enforcement in Fujian Province in 2003 as "lax" and "uneven."

The Board denied Lin's motion to reopen as untimely. According to the Board, she had not proven a material change in country conditions warranting reopening beyond the 90 days otherwise allowed for the filing of such a motion under 8 C.F.R. § 1003.2(c)(2)–(3). In explaining its decision, the Board listed Lin's evidence and discussed some of it. The Board discounted the "documents from China" because they had not been authenticated, and it rejected other, unspecified evidence as "incomplete" or "previously considered and addressed" in other cases. The Board downplayed statements purportedly from Chinese victims of forced sterilization because such statements were unsworn. The Board also noted that some victims had not given birth abroad and expressed skepticism that a parent returning to China with children born abroad would be forcibly sterilized. It concluded that "administrative punishments" not amounting to persecution are used to enforce China's family-planning policy and that Lin had not shown that she would be persecuted as a Christian if she returned there.

An asylum applicant who seeks to reopen his or her case more than 90 days after a final decision must demonstrate a material change in conditions in the applicant's home country. 8 C.F.R. § 1003.2(c)(2)–(3). This burden cannot be satisfied by evidence of current country conditions alone; conditions at the time of the original asylum case must be offered for comparison, and the applicant must demonstrate that the change in country conditions is material by presenting a prima facie case for asylum. *Liang v. Holder*, 626 F.3d 983, 988–89 (7th Cir. 2010). In exercising its discretion, the Board must consider the applicant's evidence, but it need not provide a detailed discussion of each piece. *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2010). Failure to discuss each piece of evidence is especially excusable when, as here, a massive amount of evidence has been submitted. *See Liang*, 626 F.3d at 992.

In her petition, Lin first argues that the Board abused its discretion by rejecting Dr. Sapio's expert report and relying instead on the State Department's 2007 Profile of Asylum Claims and Country Conditions, which says that forcible sterilization and abortion are not a significant problem in Fujian. Lin had offered Dr. Sapio's report to dispute the 2007 Profile's assessment of conditions in Fujian and to establish that forcible sterilization continues to be a problem. The Board explained that it was not moved by Dr. Sapio's report because it was "not persuaded" that Dr. Sapio is an expert on the reports created by the State Department. It went on to say that even if Dr. Sapio had correctly identified flaws in the 2007 Profile, this would not have changed the outcome of Lin's motion to reopen. Lin understood the Board to be saying that the 2007 Profile is "unchallengeable as a matter of law."

Lin's argument does not have merit. The Board did not conclude that the State Department's 2007 Profile was "unchallengeable as a matter of law,"and it did not reject Dr. Sapio's evidence on that basis. Rather, the Board's decision shows that it considered Dr. Sapio's report but found the 2007 Profile more persuasive. And the Board is correct that even if it had accepted Dr. Sapio's assessment of the 2007 Profile, Lin still would not have made her case, because Dr. Sapio did not assert that relevant conditions have worsened in Fujian since 2004. The Board did not abuse its discretion by rejecting an expert report that was ultimately immaterial. *See Kucana v. Holder*, 603 F.3d 394, 396 (7thCir. 2010).

Lin next objects to the Board's failure to address the 2008 and 2009 CECC reports, which she offered as evidence that China currently enforces its family-planning policy coercively. These reports characterize coercive enforcement as "commonplace," and the 2009 CECC report explains that Fujian's longstanding policy of taking "remedial measures" to enforce family-planning rules is a policy of compulsory abortion. Fujian's "remedial measures" policy is also discussed in the 2007 State Department Asylum Profile, but it says merely that the measures are "unspecified," and it never equates the phrase with compulsory abortion as the 2009 CECC report does.

The Board's failure to address the CECC reports is troubling: CECC reports are official publications that should be afforded weight, and the Board ought to have explained how it reconciles the CECC reports with its view that China's family-planning policy is enforced through administrative means. But this failure does not merit granting Lin's petition. Even if the Board had given the CECC reports serious consideration, the reports would not have established Lin's case, because they do not document deterioration in China's treatment of violators of its family-planning policy between 2004 and the filing of Lin's motion in 2010. As such, the Board's failure to discuss them is excusable under the highly deferential standard of review we apply to denials of motions to reopen.

Lin also argues generally that the Board abused its discretion by rejecting certain unidentified documents from Chinese-government websites as unauthenticated. She argues that such documents from official Chinese websites are self-authenticating "official publications" under Federal Rule of Evidence 902(5) and should not have been discounted. She does not point to specific documents, and she does not discuss how the Board's purported error affected the outcome of her case. But the Board did not abuse its discretion when it concluded that Lin's documents from Chinese-government websites were unauthenticated: Lin not argue that the documents were self-authenticating in her motion to reopen, and the three district court cases from outside this circuit she now cites do not concern the authentication of documents from foreign websites.

Lin's last challenge to the Board's decision on her claim that she faces forcible sterilization in China is that the Board abused its discretion by failing to credit evidence that her American-born children would be counted for family-planning purposes. She believes that the Board has concluded that children born to Chinese parents in some countries will be counted for family-planning purposes while children born in the United States will not. But it is not clear that the Board made such a distinction. To the contrary, the Board conceded that "China regards a child of Chinese nationals who have not permanently settled in another country as a Chinese national" without suggesting any distinction between the United States and other countries. This was not an abuse of discretion.

Before moving on to Lin's religious-persecution arguments, we make two additional observations about her family-planning-related evidence and how the Board analyzed it. First, Lin's most serious evidentiary deficiency was her failure to establish the conditions in Fujian in 2004. (Offering the Board's decision in *In re J-W-S* to establish that enforcement was once "lax" and "uneven" did not satisfy her burden. A case is not evidence.) This failure rendered most of her other evidence, including the CECC reports, immaterial. Second, although the Board's ultimate conclusion—that Lin had not shown changed country conditions—was reasonable, it would have done better to rest its decision on Lin's failure to offer evidence of 2004 conditions rather than on the questionable assertion that China enforces its family-planning policy through administrative means.

As to her religious-persecution claim, Lin contends that the Board abused its discretion when it determined that she had not demonstrated a material change in China's treatment of Christians since January 2004. She argues that she met her burden by submitting a 2007 report from the Australian Refugee Review Tribunal that describes Fujian's tolerance of Christians in 2000 followed by hostilities toward them beginning in 2002 and a *Christianity Today* article from 2009 describing hostilities toward Christians surrounding the 2008 Olympic Games in Beijing. One problem with Lin's argument is that she dates the change in conditions to 2002, which undercuts her claim that there has been a material change since 2004. She also failed to provide any evidence to support her assertion that she was persecuted in China for her religious affiliation, and she does not explain why she will be a target for persecution if returned to China. The Board's decision shows that it considered the evidence that some Christians in Fujian are ill treated and reasonably concluded that Lin had not established that she faces persecution in China based on her practice of Christianity. This was not an abuse of discretion.

The petition is DENIED.