**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 2, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GONG GENG CHEN,

    Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

    Respondent.

No. 10-9577
(Petition for Review)

**ORDER AND JUDGMENT***

Before **MURPHY**, **ANDERSON**, and **HARTZ**, Circuit Judges.

Gong Geng Chen petitions for review of a decision of the Board of

Immigration Appeals (BIA) that denied his motion to reopen as untimely.

We have jurisdiction under 8 U.S.C. § 1252 and deny the petition.

---

&ast;  After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.

Mr. Chen is a native and citizen of the People's Republic of China. He illegally entered the United States in April 1993. In August of that same year he filed an asylum application in which he asserted that he had been persecuted because of his religious beliefs. In a later interview he said that he was seeking asylum on account of his political opinions.

Removal proceedings were initiated against Mr. Chen. After conceding removability, he filed for asylum, withholding of removal, and protection under the Convention Against Torture. In his amended asylum application, Mr. Chen alleged that he and his wife (who already had one child) wanted at least one other child. At his hearing, Mr. Chen testified on direct examination that China's family planning policy would not allow them another child, but on cross examination, he admitted that they could have a second child.[1] Following a hearing, the immigration judge (IJ) issued a written decision on July 10, 2007, that denied all requested relief.

---

[1] Mr. Chen also testified his daughter would face difficulties in China because she does not speak Chinese. He also said he was afraid that he and his wife would be arrested upon their return to China because they had sought asylum in the United States.

On appeal, Mr. Chen asked the BIA to remand his case to the IJ to consider the impact of worsening conditions for members of unofficial churches in China.[2] In July 2009, the BIA dismissed Mr. Chen's appeal and denied the motion to remand. He filed a petition for review with this court, which he voluntarily dismissed in November 2009.

In January 2010, more than ninety days following the BIA's order dismissing his appeal and denying his motion to remand, Mr. Chen filed a motion to reopen. He acknowledged the untimeliness of the motion, but argued that the time restriction did not apply because of changes in his personal circumstances and in country conditions. As to his personal circumstances, he cited the fact that his wife had given birth to a second child. And as to changed country conditions, he argued that China was enforcing its family-planning policies through forcible sterilization and/or heavy fines. The BIA denied Mr. Chen's motion to reopen. Its decision outlined all of the evidence submitted by Mr. Chen, and explained that the materials were neither new nor unavailable, and in any event, they failed to establish changed country conditions. This petition for review followed.

## II.

Generally, "[a]n alien is [] limited to only one motion to reopen, which must be filed within 90 days of the [BIA's order that affirms the removal] order."

---

[2] Because Mr. Chen had withdrawn his own claim of religious persecution, he made the claim on behalf of his eight-year-old daughter.

*Wei v. Mukasey*, 545 F.3d 1248, 1251 (10th Cir. 2008) (citing 8 U.S.C. § 1229a(c)(7)(A-C)(i)). But the time limitation for filing a motion to reopen does not apply when the motion is "based on changed country conditions arising in the country of nationality or in the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." *Id.* § 1229a(c)(7)(C)(ii). "[I]n a motion to reopen (to permit consideration of additional information), the alien must 'state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material.'" *Wei*, 545 F.3d at 1251, quoting 8 U.S.C. § 1229a(c)(7)(B)).

"Our review [of a BIA order denying a motion to reopen] is for an abuse of discretion." *Wei,* 545 F.3d at 1254. "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Galvez Pineda v. Gonzales*, 427 F.3d 833, 838 (10th Cir. 2005) (internal quotation marks omitted). "On the other hand, there is no abuse of discretion when although the BIA's decision is succinct, its rationale is clear, there is no departure from established policies, and its statements are a correct interpretation of the law." *Id.* (internal quotation marks omitted).

Along with his motion to reopen, Mr. Chen submitted nearly 600 pages of documents.  The BIA found that the vast majority of this "new" evidence was not new at all because:  (1) it was presented to the IJ; (2) it was available to Mr. Chen either before or at the time of his hearing; or (3) it was immaterial.  Mr. Chen does not challenge the BIA's decision with regard to this particular evidence; instead, he focuses on three categories of documents that post-date his 2007 hearing.  According to Mr. Chen, these more recent documents establish that China has recently begun to enforce family planning policies through forced sterilization and/or the levy of substantial fines.

## A.  The Langqi Town Documents

The first category of documents are represented by Mr. Chen as having been issued by officials in his hometown, Langqi Town, which is part of the Fujian Province.  The documents are:  (1) a November 3, 2009 letter from the "Family Planning Office of Langqi Town," Admin. R. at 14; (2) "The Basic Knowledge of Population and the Family Planning," *id*. at 123-24; and (3) "Report on the Condition of Recent Progress of Population and Family Planning Program of Langqi Town," *id*. at 598-99.  The BIA did not consider these documents because they "have not been authenticated pursuant to 8 C.F.R. § 1287.6." *Id*. at 4.

Mr. Chen concedes that these documents were not authenticated pursuant to § 1287.6. He argues, however, that the regulation "is not the exclusive means of authenticating documents." Pet'r Opening Br. at 34 (citing *Yan v. Gonzales*, 438 F.3d 1249, 1256 n.7 (10th Cir. 2006)). We agree that compliance with the regulation is not the only way to establish authenticity, but Mr. Chen overlooks the fact that he did not establish authenticity by any other means. For example, Mr. Chen did not explain why he could not obtain authenticated documents. Nor did he attest to any personal knowledge of the contents of the documents or otherwise explain why they should be accepted as authentic. *See* Admin. R. at 12-13. And even if they had been accepted as authentic, there is nothing to suggest that their contents reflect a change in policy or enforcement since 2007, the time of Mr. Chen's hearing. Thus, the BIA did not abuse its discretion in refusing to consider them.

## B. The Sapio Report

Mr. Chen argues that "[t]he BIA abused its discretion and erred as a matter of law [in] rejecting the Sapio Affidavit, which outlines many of the failings of the [State Department's] 2007 Profile." Pet'r Opening Br. at 19. The Sapio Affidavit is a 2009 report titled "Review and [E]valuation of the Department of State Profile of Asylum Claims and Country Condition China," Admin. R. at 513, authored by Flora Sapio, a guest lecturer at the Julius Maximilians University in Germany. The report criticizes the State Department's 2007 Profile of Asylum

Claims and Country Conditions as wrongly downplaying China's coercive family-planning policy and posits that forcible sterilization takes place in Fujian Province. The BIA was "not persuaded that the opinion of Dr. [] Sapio . . . is an expert opinion on the unreliability of the 2007 Country Profile on China," *id*. at 5, and even if Dr. Sapio's assessment was correct, Mr. Chen "has not provided evidence that the Department of State has retracted or corrected the conclusions reached in the 2007 Profile," *id*.

Mr. Chen urges us to read the BIA's decision to say that the State Department's 2007 Profile is "unchallengeable as a matter of law absent Department of State retraction." Pet'r Opening Br. at 19. But this not what the BIA said; instead, it concluded that Dr. Sapio's report was not sufficient to overcome the State Department's 2007 Profile, citing *Matter of H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. 209, 213 (BIA 2010), for the proposition that "State Department reports on country conditions . . . are highly probative evidence and are usually the best source of information on conditions in foreign nations." *See* Admin. R. at 5; *see also Yuk v. Ashcroft*, 355 F.3d 1222, 1235-36 (10th Cir. 2004) (recognizing that State Department reports are probative evidence concerning country conditions). More to the point, the Sapio report does not assert that conditions in China have worsened since 2007, and it is therefore immaterial.

## C. The Congressional-Executive Commission Reports

Mr. Chen also asserts that the BIA abused its discretion when it failed to consider excerpts from the 2008 and 2009 reports of the Congressional-Executive Commission on China (CEEC), which describe that forcible sterilization is part of official policy in various provinces. Again, these documents do not establish a material change in country conditions. Although the language is slightly different, the CEEC's report from 2006 describes the coercive practices used in some provinces to enforce family-planning policies, including forced sterilization and/or heavy fines. Admin. R. at 390-91. To be sure, the 2008 and 2009 reports were not available in 2007, but that does not matter because the more recent reports do not indicate any worsened treatment of violators since 2006, and thus do not establish any material change in country conditions.

Based on the above, we conclude that the BIA did not abuse its discretion in denying Mr. Chen's motion to reopen as untimely. The petition is DENIED.

Entered for the Court

Michael R. Murphy
Circuit Judge

-8-