# United States Court of Appeals
## For the First Circuit

No. 11-1191

HANG CHEN,

Petitioner,

v.

ERIC H. HOLDER, JR.,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Souter,* Associate Justice,
and Boudin, Circuit Judge.

Theodore N. Cox, on brief for petitioner.
Kevin J. Conway, Attorney, Office of Immigration Litigation,
Civil Division, Tony West, Assistant Attorney General, Civil
Division, and Richard M. Evans, Assistant Director, Office of
Immigration Litigation, on brief for respondent.

March 30, 2012

---

* The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Petitioner-Appellant Hang Chen ("Chen"), a native and citizen of the People's Republic of China, challenges the determination of the Board of Immigration Appeals (the "BIA" or "Board") that a reopening of Chen's removal proceedings was unwarranted due to his failure to establish a change in circumstances or country conditions.  After careful consideration, we deny Chen's petition for review.

## I.  Background

Chen entered the United States without inspection on October 16, 1996.  On June 23, 1997, the Immigration and Naturalization Service ("INS")[1] issued Chen a Notice to Appear (the "Notice").  The Notice charged Chen with being subject to removal from the United States pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), providing that "[a]n alien present in the United States without being admitted or paroled . . . is inadmissible."  8 U.S.C.A. § 1182(a)(6)(A)(i) (2006).

On September 24, 1997, Chen appeared before an Immigration Judge ("IJ").  During the proceeding, Chen admitted the factual allegations contained in the Notice, conceded removability under the charges, and indicated his intent to apply for political asylum and withholding of deportation, or alternatively, for

---

[1]  The Homeland Security Act of 2002 transferred the INS's functions to the Department of Homeland Security.  Pub. L. 107-296, 116 Stat. 2135 (codified at 6 U.S.C. § 202(3)).

voluntary departure. Chen did so file such an application, seeking asylum, withholding of removal, and protection under the Convention Against Torture based on religion and political opinion.[2]

On December 23, 1997, the IJ held a merits hearing at which Chen testified as the sole witness in support of his application for relief from removal. After considering Chen's testimony, application, and submitted supporting materials, the IJ found Chen's testimony incredible and denied his application for asylum. Instead, noting Chen's young age and crimeless record, the IJ granted Chen's application for voluntary departure, issuing an alternative order of removal should Chen fail to depart the United States when and as required.

Soon after, Chen appealed the IJ's denial of his application; the government likewise appealed the IJ's grant of voluntary departure. Before the BIA could consider the appeal, however, Chen's counsel withdrew Chen's appeal on the grounds that Chen had returned to China. Based on this submission, the BIA deemed Chen's appeal withdrawn and the IJ's prior decision as final to the same extent as if Chen had never appealed the IJ's order. The BIA also dismissed the government's appeal of the IJ's grant of voluntary departure.

---

[2] Chen's asylum application claims that his parents violated China's Family Planning Policy, pursuant to which the government restricts couples to having only one child, that he was targeted for his parents' violation of the Policy, and that he feared persecution on account of his religious beliefs.

The papers, however, did not reflect reality. Chen had not returned to China. Instead, he was living in the United States and was married and starting a family, which grew to include three children, all of whom were born between the years 2004 and 2009. Chen allegedly was acting under the impression -- pressed upon him by counsel -- that his appeal to the BIA had been dismissed.[3] Chen also allegedly was unaware of counsel's representation to the BIA that he had departed to China. Complicating matters further, Chen's counsel died in or about 2002. Chen asserted in a subsequent motion to the BIA that he remained unaware of what truly transpired with his appeal to the BIA for years, given that dead men tell no tales and that he was unable to retrieve his file from his former attorney's office. Chen claimed it was not until approximately November 2007 that he learned what actually took place when he received a copy of his file from the Department of Justice's Office of General Counsel of the Executive Office for Immigration Review.

In mid-August 2010, Chen was apprehended and detained by U.S. Immigration and Customs Enforcement. In late August 2010, Chen filed a motion to reopen his removal proceedings with the BIA. He asserted that reopening was warranted because his former counsel

_____

[3] Because a belief that his appeal to the BIA had been dismissed still would have required Chen to voluntarily depart from the United States, pursuant to the IJ's initial order, we understand Chen to mean that he was under the impression his appeal to the BIA had been resolved (or "dismissed") in his favor.

-4-

had "egregiously acted upon [Chen's] pending appeal in a way that is well beyond the ineffective assistance of counsel." Alternatively, he requested that the BIA exercise its discretionary authority sua sponte and reopen his case.

The BIA denied Chen's motion on October 20, 2010. Specifically, the Board held that Chen's motion was untimely, as it was filed eleven years after the BIA had deemed Chen's appeal withdrawn and had dismissed the government's challenge as to voluntary departure. The BIA noted Chen's assertion that, unbeknownst to him, his former attorney had lied and represented that Chen had departed the United States, but explained that, for equitable tolling to apply to the reopening deadline, Chen had to show that he acted with reasonable diligence in seeking such reopening. The BIA held that the approximate eleven year delay in Chen's bringing his motion to reopen did not weigh in favor of a finding of such diligence. Concluding that Chen failed to show either (1) a justification for applying the doctrine of equitable tolling to the reopening deadline, or (2) exceptional circumstances warranting the BIA's sua sponte application of its reopening authority, the BIA denied Chen's motion to reopen.

Undeterred, Chen filed a second motion to reopen in December 2010, this time alleging changed country conditions and that the BIA, in formulating its decision, improperly considered a 2007 Country Profile on China prepared by the Department of State

(the "2007 Country Profile" or "Profile"). Regarding the former contention, Chen cited to what he claimed was new evidence supporting his assertion of changed country conditions, including, among other materials, letters from family members alleging persecution for violating the Family Planning Policy; recent congressional reports on human rights in China; news reports from Chinese provinces; the Congressional-Executive Commission on China's Annual Report for 2008; and an affidavit from Dr. Flora Sapio ("Dr. Sapio") that challenged the reliability, factual conclusions, and reporting methodology of the 2007 Country Profile. Chen additionally asserted that the BIA, in its previous order, improperly failed to consider Dr. Sapio's report, which served to substantially weaken the reliability of the Profile.

Regarding Chen's latter contention, Chen alleged the Profile contained significant translation errors and that it was biased, outdated, methodologically-flawed, and based on falsehoods. Further, Chen declared that the Department of State had made an "institutional decision" to work with the Chinese government "to defeat Family Planning Policy asylum claims," and thus, information contained in the 2007 Country Profile (prepared by the Department of State) was "inherently unreliable." Chen noted the BIA's repeated consideration of the 2007 Country Profile in other cases concerning Chinese nationals seeking family planning asylum, suggesting that "[t]he partnership between the Department of State

-6-

and Chinese officials to undercut family planning claims has a third eager and willing partner: the Board of Immigration Appeals." For these reasons, Chen argued that he had established changed country conditions and that a reopening of his case was merited.

The BIA did not agree and denied Chen's motion. First, the BIA noted that an alien may only file one motion to reopen, but if the alien asserts changed country conditions, providing evidence that was not previously available and could not have been discovered or presented at the prior proceeding, then no limitation on such a reopening motion applies. See 8 U.S.C. § 1229a(c)(7); see also 8 C.F.R. § 1003.23(b)(1). It then reviewed Chen's extensive documentary evidence and his arguments that an exception to the limitation on filing a motion to reopen applied in his case because of new evidence showing changed country conditions.

Specifically, the BIA acknowledged Chen's claims that the Department of State, in effect, was colluding with the Chinese government against Family Planning Policy asylum claims. Deeming these assertions unfounded, it noted that Chen failed to support his claims concerning the Department of State's alleged cooperation with China or the 2007 Country Profile's bias and falseness with material evidence. Addressing Chen's contention that the BIA omitted any discussion of Dr. Sapio's findings regarding the 2007 Country Profile in its prior order, the BIA noted that Chen had not previously offered Dr. Sapio's report into evidence. It expressly

-7-

rejected Chen's contention that Dr. Sapio's report confirmed the 2007 Country Profile's fallibility, stating "[w]e are not persuaded that the opinion of Dr. Flora Sapio of the Julius-Maximilians University in Germany is an expert opinion on the unreliability of the 2007 Country Profile on China." It also found that Chen did not show the alleged translation errors in the Profile were material, i.e., that such errors mandated a different result in his case, or were of such a serious nature that the Department of State had retracted or corrected the Profile's conclusions.

Reviewing the evidence that Chen submitted to support his changed country conditions argument, the BIA held that none of the documents from China had been authenticated pursuant to 8 C.F.R. § 1287.6 (2011);[4] some of the submitted documents were incomplete; most were not new or previously unavailable; and several documents already had been considered and addressed by the Board in its precedent decisions. Acknowledging that the evidence revealed various consequences for an individual or family that violated the Family Planning Policy, the BIA determined that such evidence, much of which was unauthenticated, did not show that Chen, himself, faced a risk of forcible sterilization on returning to China. The BIA also stated that Chen had not shown that other towns or cities' regulations regarding family planning would apply to him, nor had

[4] The BIA noted that Chen showed he had tried to have one of the documents authenticated, although based on the BIA's finding, it appears that he was unsuccessful in such attempt.

-8-

he demonstrated a risk of being subjected to economic harm amounting to persecution on returning to China. Lastly, noting evidence showing that some members and leaders of the Christian faith had been arrested or harassed by the Chinese government, the BIA determined that Chen's "evidence is inadequate to show that he will be persecuted or tortured in China on the basis of his religion." (Emphasis added.)

Thus, upon carefully reviewing Chen's submitted materials and assessing each of his specific arguments in support of changed country conditions, the BIA held that Chen did not demonstrate his removal proceedings required reopening, and it accordingly denied his motion. This timely petition for judicial review followed, with Chen raising two challenges to the BIA's decision, one broad and one narrow.

Generally, Chen argues that the BIA failed to properly consider the extensive, countervailing evidence of country conditions that he submitted in support of his second motion to reopen and that it gave far too much credence to the Department of State's 2007 Country Profile. Specifically, Chen argues that the BIA improperly failed to consider Dr. Sapio's report discrediting the 2007 Country Profile on which the BIA in part based its decision. Continuing on that same note, Chen contends that the BIA did not consider Dr. Sapio's qualifications, explain why her expertise was insufficient, or properly consider the "numerous

reliable sources from Congress and the [] Department of State" to which Dr. Sapio cited showing that Chen will be persecuted for violating the Family Planning Policy if removed to China.

## II. **Discussion**

Courts disfavor motions to reopen removal proceedings because they run the risk of frustrating "the compelling public interests in finality and the expeditious processing of proceedings." Guerrero-Santana v. Gonzales, 499 F.3d 90, 92 (1st Cir. 2007) (quoting Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007)) (internal quotation marks omitted). Because the BIA issued its own opinion in this case, "we review the BIA's decision and not the IJ's," Walker v. Holder, 589 F.3d 12, 17 (1st Cir. 2009), applying an abuse of discretion standard, Romer v. Holder, 663 F.3d 40, 42 (1st Cir. 2011); Lemus v. Gonzales, 489 F.3d 399, 401 (1st Cir. 2007). This discretionary standard, however, is not absolute. Vaz Dos Reis v. Holder, 606 F.3d 1, 3 (1st Cir. 2010). We will accept the BIA's findings of fact provided they are supported by substantial evidence, and we will examine its legal conclusions de novo, remaining cognizant of and deferential to the BIA's expertise in applying the relevant statutory framework. Matos-Santana v. Holder, 660 F.3d 91, 93 (1st Cir. 2011); Radkov v. Ashcroft, 375 F.3d 96, 98 (1st Cir. 2004). Unless the BIA committed a material error of law or acted in a capricious or arbitrary manner, we will

uphold the BIA's denial of a motion to reopen. <u>Beltre-Veloz</u> v. <u>Mukasey</u>, 533 F.3d 7, 9 (1st Cir. 2008).

Because this case concerns Chen's second motion to reopen, we briefly sketch the relevant law applicable to such motions. It is established that "[a]liens possess a statutory right to file a motion to reopen removal proceedings[,] . . . [b]ut this right is not without qualification." <u>Matos-Santana</u>, 660 F.3d at 94 (internal citation omitted). Both temporal and numerical limitations apply. <u>Id.</u>; <u>see also</u> <u>Punzalan</u> v. <u>Holder</u>, 575 F.3d 107, 111 (1st Cir. 2009). Thus, pursuant to applicable law, "[a]n alien may file one motion to reopen proceedings." 8 U.S.C. § 1229a(c)(7)(A) (2006); <u>see also</u> 8 C.F.R. § 1003.23(b)(1) (stating "a party may file only . . . one motion to reopen proceedings"). Also, the motion must be filed within ninety days after the last administrative decision's issuance. 8 U.S.C. § 1229a(c)(7)(C)(i); <u>see also</u> 8 C.F.R. § 1003.2(c)(2).

Provided a petitioner "makes a convincing demonstration of changed conditions in his homeland," however, the agency may forgive a petitioner's later and subsequent filing. <u>Le Bin Zhu</u> v. <u>Holder</u>, 622 F.3d 87, 92 (1st Cir. 2010) (quoting <u>Raza</u>, 484 F.3d at 127) (internal quotation marks omitted); <u>see also</u> 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3) (providing exceptions to the time and numerical limitations on motions to reopen, one of which permits the filing of an untimely or subsequent motion to

-11-

reopen if "based on changed [country] circumstances . . . [and] if such evidence is material and was not available and could not have been discovered or presented at the previous hearing"). To satisfy this standard, the motion to reopen must set forth new facts that will be proven at a hearing should the motion be granted. 8 C.F.R. § 1003.2(c)(1). Not just any "new facts" will do though; "[t]his new evidence must be material, and it must have been unavailable and undiscoverable at the former hearing." Le Bin Zhu, 622 F.3d at 92; see also 8 C.F.R. § 1003.2(c)(1). Any such new evidence "must, at a bare minimum, establish a prima facie case sufficient to ground a claim of eligibility for the underlying substantive relief." Raza, 484 F.3d at 128.

Chen contends that the BIA failed to consider the numerous evidence he submitted proving changed country conditions. We note at the outset that, even if we were to conclude that the BIA did not meticulously set forth its consideration of every submitted document, "[t]his court has held that each piece of evidence need not be discussed in a [BIA] decision." Morales v. I.N.S., 208 F.3d 323, 328 (1st Cir. 2000). But more importantly, a review of the record shows the BIA summarily discussed Chen's submitted evidence and punctiliously presented its reasons for either declining to consider it or deeming it insufficient to support Chen's claims. See id.

-12-

Regarding his documents from China, the BIA noted that, with the exception of one document, as to which Chen established at least an effort (albeit an unsuccessful one) to authenticate, Chen did not authenticate the materials -- consisting of letters, identity cards, birth certificates, marriage certificates, sterilization certificates, relatives' fee receipts, and a document allegedly from a Family Planning Office in China -- as required under 8 C.F.R. § 1287.6. The BIA has discretion to deem a document's lack of authentication a telling factor weighing against its evidentiary value. See Le Bin Zhu, 622 F.3d at 92; Tawadrous v. Holder, 565 F.3d 35, 39 n.2 (1st Cir. 2009). Indeed, we particularly respect such discretion when the BIA's refusal to credit unauthenticated documents is balanced against the IJ's unchallenged determination that a petitioner's testimony was not credible in the underlying proceedings, as occurred in this case. See Le Bin Zhu, 622 F.3d at 92; see also Qin Wen Zheng v. Gonzales, 500 F.3d 143, 147 (2d Cir. 2007).

Further, the BIA noted that many of Chen's submitted materials were not new or previously unavailable, going against clear requirements under applicable law. See 8 C.F.R. § 1003.2 (c)(1) (providing that motions to reopen immigration proceedings may only be granted if a petitioner produces evidence that "is material and was not available and could not have been discovered or presented at the former hearing"); I.N.S. v. Abudu, 485 U.S. 94,

-13-

104-05 (1988) (stating the BIA may deny a motion to reopen because movant failed to introduce previously unavailable or material evidence). It also indicated that some of the documents had already been considered by the BIA in previous decisions, a factor weighing in support of the BIA's summary review of Chen's evidence. See Xue Yan Lin v. Holder, 325 F. App'x 179, 185 (4th Cir. 2009) (affirming BIA's denial of motion to reopen where BIA rejected petitioner's arguments based on own precedential decisions in which the BIA "had already evaluated much of the background evidence submitted and relied upon by [applicant]"); Wang v. B.I.A., 437 F.3d 270, 275 (2d Cir. 2006) (stating the BIA is not required to "expressly parse or refute" each of petitioner's arguments or submitted evidence, particularly evidence that "the BIA is asked to consider time and again" (internal citation and quotation marks omitted)).

As to the documents' substance, the BIA comprehensively explained why none of the submitted evidence showed that Chen, if deported, reasonably risked facing forcible sterilization, see Xue Yan Lin, 325 F. App'x at 184-86 (affirming BIA's determination that petitioner failed to show a reasonable fear of sterilization if removed to China, despite evidence showing that local officials in certain areas of China insisted on sterilization under the Family Planning Policy); economic harm amounting to persecution, see Alexandrescu v. Mukasey, 537 F.3d 22, 25 (1st Cir. 2008) (denying

-14-

petition where asylum petitioner failed to show harm rising to "serious economic deprivation"); see also Zhuang v. Gonzales, 471 F.3d 884, 890 (8th Cir. 2006) ("Fears of economic hardship or lack of opportunity do not establish a well-founded fear of persecution."); or persecution or torture on the basis of his religion, see Guang Zhao Zhang v. Holder, 330 F. App'x 201, 203 (1st Cir. 2009) (affirming BIA's conclusion that alien failed to show a well-founded fear of persecution based on religion where evidence showed petitioner's religion was officially recognized and rapidly growing in China, and it did not show that similarly situated members of his faith were prohibited from worshiping or subjected to a pattern or practice of persecution). We find no error in the BIA's proffered justifications for finding Chen's documentary evidence inadequate to support Chen's claims.

We narrow our focus to Chen's particularized argument concerning the 2007 Country Profile and Dr. Sapio's proffered expert opinion. Most basically stated, Chen claims that the BIA gave far too much weight to the 2007 Country Profile's unreliable findings in making its conclusions, and improperly rejected Dr. Sapio's expert opinion and materials discrediting the Profile. We find no abuse of discretion in the BIA's consideration of the 2007 Country Profile or rejection of Dr. Sapio's opinion.

Both this Court and our sister courts have previously recognized the high probative value of Department of State reports

regarding a foreign country's conditions. See Zarouite v. Gonzales, 424 F.3d 60, 63 (1st Cir. 2005); see also Xiu Jin Yu v. Att'y Gen. of U.S., 429 F. App'x 158, 161 (3d Cir. 2011) (per curiam); Shao v. Mukasey, 546 F.3d 138, 166 (2d Cir. 2008); Ambartsoumian v. Ashcroft, 388 F.3d 85, 89 (3d Cir. 2004) ("[W]e have held that State Department reports may constitute 'substantial evidence' for the purposes of reviewing immigration decisions." (quoting Kayembe v. Ashcroft, 334 F.3d 231, 235 (3d Cir. 2003)); Yuk v. Ashcroft, 355 F.3d 1222, 1235-36 (10th Cir. 2004) (citing cases and noting that Department of State reports are probative evidence concerning country conditions); Koliada v. I.N.S., 259 F.3d 482, 487 (6th Cir. 2001) (per curiam) ("Other circuits have held that State Department reports on other countries are entitled to significant deference when assessing conditions there."); Lal v. I.N.S., 255 F.3d 998, 1023 (9th Cir. 2001) (stating that Department of State-issued reports are the "most appropriate and perhaps the best resource for information on political situations in foreign nations" (quoting Kazlauskas v. I.N.S., 46 F.3d 902, 906 (9th Cir. 1995)); Rojas v. I.N.S., 937 F.2d 186, 190 n.1 (5th Cir. 1991) (per curiam) (stating that reports from the Department of State are "the most appropriate and perhaps the best resource the [BIA] could look to in order to obtain information on political situations in foreign nations"). However, while the BIA may "rely on the State Department's country reports as proof of country conditions

described therein, . . . it must also consider evidence in the record that contradicts the State Department's descriptions and conclusions." Waweru v. Gonzales, 437 F.3d 199, 202 n.1 (1st Cir. 2006); see also Uruci v. Holder, 558 F.3d 14, 21 (1st Cir. 2009). A review of the record shows that the BIA did just that.

Although Chen cited to translation errors in the Profile weighing against its reliability, we find no error in the BIA's determination that Chen did not establish that the translations, as corrected, would significantly alter the meaning of the submitted country condition evidence such that grounds for reopening would be established. See Xiu Jin Yu, 429 F. App'x at 161; Wan Ping Lin v. Holder, 361 F. App'x 232, 233 (2d Cir. 2010); Jian Xing Huang v. Holder, 342 F. App'x 718, 719 (2d Cir. 2009). Moreover, the BIA noted that the Department of State had not "retracted or corrected the conclusions reached in the 2007 Profile," further weighing against Chen's arguments as to the Profile's alleged inaccuracy.

Regarding Dr. Sapio's affidavit, the record shows that the BIA did not prevent Chen from offering Dr. Sapio's report into evidence; instead, it reviewed Dr. Sapio's affidavit and credentials and simply determined that it was "unpersuaded" that she was qualified as an expert as to the 2007 Department of State-generated report or its alleged unreliability, for which her expertise was specifically offered. Although the BIA did not offer a detailed explanation as to its rejection of Dr. Sapio's opinion,

we have not held the BIA to such a high standard before, and find no need to do so here. See Morales, 208 F.3d at 328 ("Where, as here, the [BIA] has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented." (quoting Martínez v. I.N.S., 970 F.2d 973, 976 (1st Cir. 1992) (internal quotation marks omitted)). Indeed, this is not the first time that a circuit court of appeals has rejected, on the same grounds, this very same expert's same opinion proffered to challenge this same 2007 Department of State Country Profile. See, e.g., Gong Geng Chen v. Holder, 444 F. App'x 305, 308-09 (10th Cir. 2011); Qiao Ling Lin v. Holder, 441 F. App'x 390, 393 (7th Cir. 2011); Zhong Qin Hu v. Att'y Gen. of U.S., 437 F. App'x 154, 159 (3d Cir. 2011); Whan Quang Ming v. U.S. Att'y Gen., 428 F. App'x 928, 932-33 (11th Cir. 2011); Xiu Jin Yu, 429 F. App'x at 160-62.

Although Chen claims that the upshot of the BIA's rejection of Dr. Sapio's opinion was, in effect, to deem the 2007 Profile "infallible," we disagree. A review of the BIA's decision shows that it simply concluded that Dr. Sapio's report was not sufficient to counter the 2007 Country Profile, particularly where the Department of State had not indicated any need to retract or correct the Profile's findings. Driving this point home yet further, we note that even Chen's arguments on appeal in support of

-18-

Dr. Sapio's report do not establish that conditions in China have worsened since 2007 or that the BIA's consideration of her opinion would have affected the outcome in his case.[5]  See Gong Geng Chen, 444 F. App'x at 309 (affirming the BIA's rejection of expert report where it did not assert that conditions in China had worsened since publication of the Department of State's 2007 Country Profile, and deeming such report "immaterial"); see also Qiao Ling Lin, 441 F. App'x at 393.

Stated simply, the BIA weighed the 2007 Country Profile against Dr. Sapio's report and found the former to be more compelling.  We find no error in the BIA's consideration and rejection of Dr. Sapio's proffered opinion and report.  See Bala v. U.S. Att'y Gen., 429 F. App'x 865, 869 (11th Cir. 2011) (holding substantial evidence supported the BIA's deferral to Department of State country reports over an expert's testimony, which the BIA deemed insufficient for establishing that petitioner had an objective fear of political persecution).

---

[5]  On appeal, Chen argues that the "Sapio Affidavit provided 'countervailing' evidence of country conditions," including sources confirming that "the practice of forced abortion and sterilization still takes place" in China in various localities, and that the Family Planning Policy "remains commonplace," with the Chinese government authorizing "planning officials . . . to take 'remedial measures' to deal with 'unlawful births,'" such as forced abortions or other forms of forced sterilization.  Notably, these arguments in support of the alleged "countervailing evidence" fail to contradict the 2007 Country Profile or the BIA's findings based therefrom, which acknowledged China's Family Planning Policy, its different means of enforcement, and its prevalence in certain provinces in the country.

### III.  Conclusion

A review of the BIA's denial of Chen's motion to reopen reveals no commission of a material error of law on the BIA's part, nor any arbitrariness or capriciousness in its consideration of Chen's claims.  It noted all of the evidence on which Chen relied, carefully considered such evidence's authenticity and relevance, and intelligibly explained why it deemed Chen's motion insufficient for purposes of satisfying the changed circumstances exception and justifying a reopening of his case.  The materials that Chen submitted in support of his second motion to reopen did not establish a fundamental change in country conditions such that a reopening of his case would be justified under the law.

The decision of the BIA is affirmed, and the petition for review is **denied**.